I'm honored again to be sitting today with Judges Costa and Willett. We have two cases on for oral argument this morning, as well as some NOAs. Looks to me like all assemble or veterans of this situation, so the main rule is just make sure you're speaking good and use your thespian voice in the mic because we do record the oral arguments both now and as we work on the opinions. So as long as you speak clearly in the mic, we should be good to go. All right, thank you. First case up, number 20-50938, Rocket Special Utility District. Mr. Harris, you're up. I can always tell the ones that are on the edge of their seats. I am Steve Harris for the appellant, Rocket. Magistrate Judge Lane's report and recommendation, which was adopted by the district court . . . Let me say this. I meant to say this at the introduction. We received of late a motion to take judicial notice, which wasn't ruled on beforehand. It was carried with the case. I know that the response has been filed, but it's here. Do not spend forever of your time speaking to it, but at some juncture or supplementary to what you file, you can speak to it. But don't take all your argument talking about it, but it's carried with the case and it will be among the things we decide. All right, thank you. In the Lane report and recommendation, he makes the statement, plain reading of the statute term referring to such a loan must refer to federally funded or I think this overlooks two important issues. The first being the word insurer that appears in Title 7, Section 1926A1. And the word insurer has been there since 1961 in its relationship with 1926B. 1926B and the first sentence of 1926A1 have not been amended or modified since 1961. This is an observation that was made by Chief Judge Owen in her dissenting and concluding opinions in the Green Valley v. Schertz case. Other courts, particularly the Tenth Circuit, has referred to the words of a loan that is made, a loan that is insured, and a loan that is guaranteed. The district court reached the conclusion that the only 1926B protection that can apply is for loans that are federally funded or loans that are guaranteed. Again, I think that decision or that conclusion reached by the court overlooks the word insured in 1926A1 and overlooks the word insured as it appears elsewhere. The word insurer also appears in the statute at 1926A, subparagraph 18, and perhaps more notably in Title 7, U.S. Code, Section 1983, is the phrase insured or guaranteed loan issued or modified under Section 1926A. I would urge this court to look at the conditional commitment as a form of insurance which is relied upon by the lender, Co-Bank here. The word insurer, dictionary definition, means that it's a form of protection. Insure is a very broad word, and insurer being so broad, guarantee fits within that umbrella. But the conditional commitment, if we look at the conditional commitment as a form of protection for the lender, that lender turned loose of $1.6 million in this particular case on the strength of that conditional commitment. The discussion in Wells Fargo versus U.S. dealt with a USDA conditional commitment. In that case, the USDA challenged it and said, well, we're not obligated at all. We're off the hook. That's a meaningless instrument. The Federal Circuit disagreed and said, no, that is a binding, solemn promise by the government of which the lender relied upon, made a loan, and therefore the lender was entitled to. Mr. Harris, while this appeal was pending, your client did receive a loan note guarantee, correct? That's correct, Your Honor. And all the parties agree that that loan note guarantee counts as such a loan under 1926, right? No question about that, Your Honor. And then you filed a second federal lawsuit against the same defendants, right? Against the same defendant and a few others, concerning the 1926 protections from that newly acquired loan note guarantee, right? There were activities that occurred after the dismissal of the first lawsuit and the filing of the second in which there were additional petitions filed with the Public Utility Commission of Texas seeking decertification. I think my question, I guess, and this can't be surprising to you. So you now got the loan note guarantee. Everybody agrees it counts as a such loan under the statute. So what is the live? I'm having a hard time figuring out what is the live controversy in this case. Your Honor, I would respectfully submit that the only thing that is potentially mooted by the USDA issuing that loan note guarantee is that it has mooted an invalid defense that was raised at the district court and one of a number of defenses. The defendant said, well, amongst our multitude of defenses, including that you're not making service available, which I think Alamo puts in a footnote, says you don't have the loan note guarantee and that's the magic document that you need. That was, in essence, a defense. It is an invalid defense, which is why we're here. The case or controversy rages on. After the district court case was dismissed, the PUC proceeded right forward and decertified Alamo's property, released it, and as we speak today, there's a big backhoe out there and they're putting white water pipe in the ground. You argue that we could still grant your client relief and explain to me what that relief would look like. The relief here we're praying for, Your Honor, is of course a reversal and remand the case back to the district court. I fully anticipate the district court would consolidate the first case with the second case since there are additional defendants in the second case. That's the relief we seek from this court and I think more importantly, we're seeking a decision from this court that there is a, the interpretation from the district court, if that decision were allowed to stand, would create this gaping hole that Chief Judge Owen referred to in her dissenting and concurring opinions, granted in a different context, but from a practical standpoint, when the loan is made and the conditional commitment is issued, that loan note guarantee may not show up for. But in terms of the, the claims raised and the relief requested between the current case and the new federal lawsuit that's been filed, is the Venn diagram sort of overlap of those two not basically a circle? I mean, everything in the second lawsuit is sort of captured, is being litigated in this one, is it not? That's correct, Your Honor. I guess the argument would be is the second lawsuit would moot the first lawsuit. I think the better analysis is what exactly is before the court and has it been mooted by the issuance of the loan note guarantee. The issue before this court is whether or not a conditional commitment triggers 1926B. But why do we have to, I mean, this is just saying the same thing Judge Willett did, but why do we have to set aside that issue which you've been arguing about whether a conditional commitment falls under the statute? If everyone agrees you're beyond a conditional commitment, have a full guarantee, and as you put it, that defense they're raising is basically no longer in the case because you've now got the guarantee. I mean, why aren't you just going forward in the second lawsuit and litigating, and why does this matter to you anymore? Other than I know you probably don't like the district court opinion, but that's, a lot of people don't like judicial opinions that doesn't give you a live controversy. It was an issue, I know that a Rosen Green Valley case, and there was still a live controversy, I think, as to Schertz, but not as to the company that was seeking to expand its service. But here, I view the case as one in which it should not have been dismissed, and a second lawsuit can't be equated as just as good as the first, and if that first decision continues . . . But you got what you asked for. Well, Your Honor, I . . . If you received what you asked for . . . I haven't received any relief yet from the district court. I did receive a . . . But in terms of the commitment, I mean, that was your primary thrust, right? If I understand the court's question . . . Well, it's just a repackage of what my colleagues have asked. It's just hard to get past the fact that while this was rocking along, you know, approval is there, but you say it moves the defense out, but it doesn't move out the main action. I'm having trouble with that. You know, the PUC was holding its pistols in the holster during the pendency of the first case, and the moment that case was dismissed, not long thereafter, there was a decertification. That's, I suppose, the initial harm that Rocket has suffered as a result of its first case being dismissed. That it's . . . The second lawsuit, indeed, covers all of the issues of the first lawsuit, and perhaps then some. And there's been a recent ruling from the magistrate, Judge Lane, last Friday that affects that second lawsuit, not particularly harmful for the plaintiff, Rocket. The court has granted permission to amend to address this equity lawsuit under 1983. But that's another issue that's raised in this case, to remain focused on the court's issue as to whether this case is moot. Once again, I submit that an invalid defense was mooted by the issuance of the loan note guarantee. Right. So, I mean, I can see your argument that the whole case, this whole case shouldn't be mooted, because if you look at the complaint, it's not just about this conditional certification issue. But you're asking us to say the district court was wrong, you know, in statutory interpretation. Why is that issue before us? I think that issue is squarely before the court. Is . . . We have raised the issue and appealed on the notion . . . But you don't have a condition. You're beyond conditional certification now. Well . . . I mean, I can see why you're saying, well, the appeals might be moot, but we could . . . The lawsuit itself should still go on, because we have claims against the public utility commissioners, et cetera. But why this issue has to be decided is what I'm having a hard time understanding. How that affects anything between these parties anymore. I suppose, Your Honor, of kind of shifting gears, that if the court were to conclude that the case . . . not the case, but the issue before the court has been mooted by the issuance of the loan note guarantee, in that context, I would urge this court to vacate the district court's judgment and remand the case. This was part of the discussion in Green Valley, and the court pointed to Staley. Staley was a circumstance in which the appellee, the removal of a statute that was offensive to someone, that was a voluntary act made by the appellee, and that appellee argued, well, hey, look, let that decision stand. And the court said, no, we're not going to do that, because you voluntarily, affirmatively caused something to happen, and as a result, we're not going to vacate the underlying judgment. Here, we don't have that circumstance. So, indeed, if the court were to hold that this appeal is moot, then again, I would urge the court to vacate the district court decision, remand this case, not for dismissal, but for further proceedings for a consolidation of case one and case two. In the typical remedy for mootness, dismissal? It is, Your Honor. I think this is a unique circumstance in which we have a second lawsuit. You want us to make some law? Well, Your Honor, I think it's an available remedy for the court. This has been a minefield of technicalities. That's what we specialize in. I mean, you know, that's the grist here. The more complicated it is, that's what we do, right? And my concern is, one misstep by my peer may trip another domino down the road. So, obviously, I'm seeking the relief that's most favorable for Rockett. That would be if the court were to determine the case moot. But the second lawsuit is no narrower than the first one, right? That's correct. It actually has a few other defendants, of course, but the issues raised are all the same. Am I correct? Your Honor, I think you are correct with one slight... I ask because I just don't know why we would send it back with instructions to consolidate if case one and case two are basically duplicative. They are duplicative. We filed case one as a 1983 case, or at least that's a claim that's been issued, 1983 to enforce 1926B. This is an issue that the PUC has urged the court to take up, and I also urge the court to take up the issue of whether or not Rockett can be a plaintiff in a 1983 case. The PUC points to Birchfield, and I would point the court to footnote 26 in Green Valley, which seemed to predict the demise of Birchfield. Monel implicitly overruled the claim that 1983 doesn't apply to municipal corporations or governmental entities. So in footnote 26, the court said, you know, the first part of Monel has basically been overruled or abrogated. The second issue is not reached in this case because Rockett is not enforcing constitutional rights. It is enforcing statutory rights. So in this particular circumstance, Birchfield... Did you argue that in the second case? Your Honor, we did, and... I think the question is what, practically speaking, what is it that you can't do in the second case? I can do the same thing in the second case that I was trying to do in the first case. So why are we here? On this issue that the district court's decision, if by chance it were not vacated, I think is an erroneous, incorrect interpretation of what constitutes a conditional commitment. It also tips over a domino. If that decision remains somehow in effect and not vacated by this court, it's going to tip over a domino that will influence countless other cases in which water districts are trapped between the moment they borrow the money, they build the project, and yet all the while the neighboring municipalities and the PUC are aggressively decertifying water district territory. That has produced great harm, and the problem is more illustrated in Texas than it is anywhere else in the United States. On that point, I'm going to stop you, Mr. Harris. You've exhausted your initial time, but you have fully reserved your time. We'll pick up with you when you come back on rebuttal. Thank you, Your Honor. In rebuttal, I will address the issue regarding the motion to take judicial notice. Okay, that's fine. Thank you. All right, we'll hear from Alamo Mission, Mr. Romero. Good morning, Your Honors. May it please the Court, Josh Romero for Alamo Mission. To give the Court a roadmap, I'm going to speak on mootness. It seems like the Court understands the mootness doctrine, so I may end up yielding some of my time. My colleague James Parker with Red Oak is going to speak on the 1926 and Conditional Commitment Guarantee, and we have the Attorney General's Office here as well, who's going to wrap up with the last two minutes. Well, let me ask you about mootness. I understand your argument for why the appeal is moot, because this conditional certification is no longer an issue, but why does that make the entire case moot, as opposed to just saying remand? In other words, let's say he had never filed a second lawsuit. Wouldn't we just then send the case back to continue with these other live issues, even though this particular issue or defense is no longer live? Judge Costa, I think he's made clear by the filing of the second lawsuit that that second lawsuit is not an issue. I think, obviously, he's saying the first lawsuit was based on a conditional commitment, and so if you were to remand, I suppose there would need to be a motion to amend the complaint, because, clearly, by filing the second lawsuit, the loan note guarantee is not at issue in the first lawsuit. And so I think by filing the second lawsuit, he's made that admission, and I think dismissal on appeal would be the most appropriate, given the reality that there is that second lawsuit. Your Honor, Rockett asked this Court to opine on a moot question, whether the conditional commitment from the USDA qualifies as federal debt. That question is obviously moot. During the interim of this appeal, there's been the loan note guarantee issued, and, in fact, we've talked about the second lawsuit that's based on that second loan note commitment. And so the question before the Court has now become moot, and I echo Judge Costa's comment of why are we here. That's the question that we've asked all along, specifically once this loan note guarantee is issued. As Justice Roberts has noted, the Court is not an advice columnist, and that's what a decision on this conditional commitment and whether it qualifies as 1926B asks the Court to do, because an opinion, regardless of what way the Court goes, is meaningless in light of the facts. Is Rockett aggrieved in any manner by, let's say, any kind of delay in issuing the commitment? I mean, I don't remember that they argued that, but, I mean, in whatever the timing is for action, is there any potential egregious or damage or whatever that might, by a scintilla, you follow me, be part of it? Or, as you say, filing the second lawsuit obviates that, even if that were the case. Do you follow me? Yes, yes, Judge Stewart, I do. And the answer is this, and this is really key, is the timing. If you look at when the loan note guarantee was issued, it was December of 2020. A month later, the PUC decertified. And so that decertification is the whole ballgame. They had the loan note during that interim when they only had the conditional loan note guarantee. And all you have to do is look at their pleadings, and they tell you, we want to stop the decertification. And they, of course, had that loan note guarantee in place over a month before the actual decertification, Your Honor. I'll note in the Green Valley decision, the en banc that the Court recently dealt with, there was the mootness issue. And in that decision, the Court said, a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. Your Honor, that's exactly the case that we have here. It's become moot on appeal. The single controlling issue of whether there's federally guaranteed loan in place under 1926B has been answered. We don't dispute that. That fight will never happen again, that there's a loan note guarantee and the federal debt issue has been resolved. And I think the best way of looking at that is when you're dealing with 1926B, there's really two elements, right? You have the federal debt, is there federal debt? And the second is, I'll call it the pipes in the ground, colloquially. The first issue, is there federal debt? Again, it's never going to be an issue because of that loan note guarantee. And so that's why this appeal is moot. Let me get to the Court's question about dismissal versus vacator. Obviously, I think the default is it would be dismissed and the underlying decision vacated. We don't think that's appropriate for three reasons. The first is the public policy reason. The second is the deterrent reason. And the third reason is fairness. And I'll address each in turn. The public policy aspect of this. Judge Lane issued a thoughtful, thorough decision on this case. Judge Pittman looked at it, adopted that. And we think the legal community will benefit from that decision. As my friends on the Rocket side point out, no court in the country has ever addressed whether a conditional commitment affords 1926B protection. Now we have a decision on that out there and have some guidance on the issue. The second is the deterrence issue. As the Court will note, in Rocket's opening brief, they relegated to a footnote the fact that a loan note guarantee was issued. And they said it's not germane. And as we point out in our brief, not only is it germane, it's outcome determinative. And so we think when you relegate things to a footnote, that warrants dismissal and letting the opinion down below stand. And finally, fairness. Your Honors, we've got this decision that's favorable to us. And it's not because our arguments lack merit or because we did something wrong, but that Rocket continues to pursue this appeal after it's been moved. And so we think fairness goes in our favor as far as keeping this decision fair game. If the Court doesn't have any other questions, I'll yield the remainder of my time to Mr. Parker. All right. Thank you, sir. Thank you. We'll hear from the City of Red Oak. Mr. Parker. Thank you, Your Honors, and good morning, and may it please the Court. My name is David Parker. I'm the Chief Justice of the City of Red Oak. And I'm here to speak to you today about Section 1926B, which extends protection only during the term of such loan. And secondly, it's consistent with the purpose of Section 1926B, which is to ensure that the borrower can repay its loan. And that's important that the borrower repay its loan, because it only applies to a loan that is made or insured by the federal government, protecting the federal government's money, protecting the taxpayer's money. Starting with the language of Section 1926B, when we talk about—and I've been kind of both grimacing and laughing as I both read the briefing and wrote some of the briefing—when we talk about what is a such loan, quote-unquote, as though a such loan is a thing. It's just a loan. And what is the loan that gives protection? That's the question. And it's, of course, the loan that is made or guaranteed under Section 1926A. Rockett argues that, well, there's this third category of insured. But Section 1926A talks about insurance. Right there, it's 1921A1. It is a loan that is made out of the Rural Development Insurance Fund. When there's a default on a guaranteed loan, the USDA pays that default out of the insurance fund. And so in this context, a guaranteed loan is an insured loan. They're the same thing. There's no third category of insurance. And a conditional commitment is in no way what I think any of us, as we look at the term insurance, would consider to be insurance. It is simply a promise to guarantee a loan in the future if certain things happen, if conditions precedent are met. And so the question addressed in Wells Fargo is teed up here, and it's very important. If Rockett had defaulted when it only had a conditional commitment, would the federal government be on the hook? The answer is absolutely not. That was the point of Wells Fargo, is that it's a lender, and when the federal government didn't issue the loan note guarantee upon the conditions precedent happening, then Wells Fargo sued the federal government to get that guarantee, because the loan note guarantee as set forth in the regulations is the only document that obligates the full faith and credit of the United States to pay on a defaulted loan. Without that loan note guarantee, it is the lender, not the federal government, that is left holding the bag. And so at all times relevant to this suit, that's where we were. There were no federal funds obligated, and every court in the country to have addressed this says that during the term of such loan means only when there are federal funds on the hook, not before those federal funds are obligated, not after. And that is also consistent with the purpose of the statute. The purpose of 1926B, as I said, is to protect the federal taxpayer from a default, to ensure that they can repay their loan. But the greater purpose of section 1926 overall is to promote rural development, and here it's being hindered. This series of disputes began when Alamo Mission and ROIDC requested water from Rocket. Rocket wrote back to Alamo Mission saying two things. First, we can't provide water, and second, that we don't have any federal debt. Rocket has never done anything to address the first. They've never added infrastructure or tried to provide water. They have only tried to get federal debt, and the purpose for that is simple rent seeking, your honors. I noticed that unlike the other two defendants, your brief doesn't argue mootness. Do you have a position on that? I do, your honor, but it's different from my friends at Alamo Mission. We do not believe that it is moot because of the loan note guarantee, because there is a second suit going on, and it is an important outstanding question then when section 1926B protection occurs. When does it kick in? And so from that standpoint, I don't think that question is moot. We do take the position, however, that the entire case is moot because the PUC has ruled. Actually, with respect to us, it denied our petition, so we did not get our track decertified. With Alamo Mission, the PUC did decertify, and so there is, this suit at the district court in the petition was only for injunction to prevent the district, to prevent the PUC from acting. The PUC has now acted, and under Ex parte Young, as discussed at some length in the Green Valley case, there is no remedy, no relief that the district court could issue to roll back the PUC's previous decision. So your client has to use the rocket still, that area. It wasn't decertified. That's correct. To cover water usage in that. That's correct. We are in rocket CCN, and we're going to be in rocket CCN, and there is no, as far as we go, there is nothing before the PUC to enjoin. There's no pending proceeding at all for us to enjoin. Maybe you shouldn't be here. A lot of people are paying legal bills for stuff that might not matter anymore. Your Honor, I think that's completely correct, and I would agree that I shouldn't be here, but of course the court issues an invitation to oral argument, and I don't decline the court's invitations. Good dining here. That's entirely correct, Your Honor. Excellent cuisine, notwithstanding other environmental circumstances. That's right, Your Honor. If I understood it right, you, not you, but Red Oak, argued that the court could still issue a declaratory judgment with respect to the statute vis-a-vis the conditional commitment. So if I understood it right, you know, so said differently, the notion that even though the claim originally for damages may be gone, that mootness doesn't necessarily capture a claim for declaratory relief if there's a showing of harm going forward, etc., etc. Now, when Mr. Harris was up here, he didn't argue that for other reasons it's not moot. We want declaratory relief, body, body. That's not what he said. We all heard what he said. So Red Oak argued that somehow the issuance of the declaratory judgment on the statutory reading during the window of the conditional commitment was a rationale for no mootness there. So do I understand you're still urging that, considering what you just said, or was that, you know, an argument but maybe not as strong now? No, I think that's right, Your Honor. I think new circumstances have come to light. Okay. Is that with the dismissal of our petition, there is no live case or controversy. And as far as Alamo Mission goes, there is also no live case or controversy because there is no relief that the district court could give because any possible injunction against the PUC would be purely retrospective. It would be, roll back that order you made earlier this year, which, of course, under Ex Parte Young and under Green Valley, the district court can't do. And I would just observe that this is different from the Green Valley case because in Green Valley, there was a decertification from Green Valley and a recertification to Schertz. And so there was an ongoing PUC enforcement of that new recertification to Schertz. Here, we are missing that critical second step. It's just a decertification. There's no recertification to anybody, and so there is no ongoing PUC enforcement mechanism. There is no ongoing PUC anything with respect to either ROIDC or Alamo Mission, and so no prospective relief that the court could give, which is necessary under Ex Parte Young. And for the reasons that Mr. Romero indicated, we would urge dismissal of the appeal rather than vacature because there is an ongoing dispute between these parties, all of these parties. The district court's decision is right on the merits, as we discussed in our briefing, but it also does affect the parties' rights going forward as we do go forward in this second case about when Section 1926B kicks in. So we would ask the court to dismiss the appeal on mootness but do not vacate the decision of the district court. All right. Thank you, Your Honors. Thank you, Mr. Harris. All right. We hear from Mr. Hill from the Attorney General's office. Yes, sir. May it please the court. John Holm, Assistant Attorney General for the Commissioners of the Public Utility Commission of Texas. Council for Alamo Mission has already discussed the mootness issue and the court has engaged in an extensive conversation with Rocket's counsel about that, so I won't belabor the point other than to say that the issue that was presented by this lawsuit to this court was whether the conditional commitment could be the basis of a Section 1926B claim. Well, the facts have changed. Those aren't the circumstances here anymore. Rocket has the loan guarantee, and so it has to acknowledge that the issue here regarding the conditional commitment is now purely academic, and what Rocket is asking the court for there would strictly be an advisory opinion based upon hypothetical facts. Circumstances have changed. Rocket has filed a second suit, as has already been discussed today. All the issues that are involved here can be dealt with in that second suit. Second suit concerns not only these two release petitions, but two other release petitions. All the issues that have been raised in this first suit that's now before this court can be dealt with in the first instance by the district court in that second case, and so it makes more sense, certainly from a position of the district court, to proceed and resolve all those issues and take the first crack at that. The bottom line here is that this court simply need not spend any more of its resources in resolving this case. All right. Thank you, sir. Thank you. Wonderful use of two minutes. Everybody can't do that. All right. Back to you, Mr. Harris. Thank you. First, addressing the issue of judicial notice that was recently filed last week, I would urge the court to reject that. Obviously, the court has power to take judicial notice, but here we're reopening Pandora's Box after the city of Red Oak and—  No, it would not. Picking up on comments from the court that I heard during opposing counsel's discussion, first of all, Judge Costa made the observation, well, what if Rockett hadn't filed the second lawsuit? Well, then I think the court would remand the case for further proceedings, and included within those further proceedings would be a consolidation of the case. I think that is preferable to a dismissal and doesn't invite somebody to come forward with some kind of new law. We're just dealing with a unique circumstance here where everyone can concede. There remains a live controversy, so if the case is going to be remanded, it should be remanded as a continuation of a live controversy, which, obviously, I think the district court would consolidate the two cases. It seems to me the real sticking point between the parties, it sounds like you'd be happy with us saying this appeals moot and vacating the decision below. They don't want the decision below vacated. I mean, it seems, as I'm listening to this, that that's really the sticking point, is what's going to happen to this district court decision. Is that your sense? Yes, it is, and obviously, I'm urging the court to address this overarching issue of whether a conditional commitment is something that triggers 1926B protection. I would welcome this court to pick that issue up and take it. But it seems like you'd also be happy with a mootness ruling and a vacator, which is the default rule when something's moot. I think it's a sliding scale of happiness, Your Honor. Obviously, I would be content with vacating the decision and sending it back. It's lower down on my wish list. How important is this issue going forward, given the Department of Agriculture regulation that now allows, you know, if the lender pays that additional fee, it doesn't, it prevents this period of, this intervening period that's been the concern? I think the only issue there is, there is a price tag associated with it, and I think it's one-half of 1% of the loan amount. Water District goes out and borrows $50 million to run a 100-mile pipeline. That one-half of 1% looms large in terms of an additional expense, and granted, the lender's supposed to pay that, but we all know, practicalities of life, that's going to find its way back into increased interest rate fees. The lender's just not going to eat that. So that's my primary concern with, yeah, that's a new ballgame, and what is everybody doing? Well, from my knowledge, everybody is plunking down that one-half of 1% to buy certainty so they can get the loan note guarantee at loan closing and not have this potentially two- or three-year lag time. I mean, to put up a new water tower might take two years. 100-mile waterline extension is an exaggeration, but a 10-mile, that happens all the time. That might take three years, and so you live in this uncertainty, and therefore, it imposes this additional monetary obligation on districts to pony up the money up front. Otherwise, they run the risk that they may ultimately lose their territory if this conditional commitment issue is not, at some point, resolved, and this is, of course, the court of first impression for that. This is a brand new issue, brand new ballgame. Judge Stewart made an observation that caught my attention quickly, and that is, Judge Stewart pointed out, well, Harris didn't make any reference to making a decision on declaratory judgment. I would urge the court to do precisely that, is to pick this case up in the sense of a declaratory judgment action, and granted, I've gotten my loan note guarantee, but we still have the looming issue that was at the district court and is now here for this court. Yeah, but that, you know, that, I mean, my question wasn't designed to refuel your armament, but to just look at what had been asked, but as I understand the law, had you not filed the second lawsuit, I mean, arguably, you know, you'd say, well, I need declaratory relief because of a, quote, continuing harm, which is why I asked, okay, was there any kind of grievance based on the timing, I understand the answer to be no, so I guess my take and think you agree, when you file the same lawsuit, and if everybody's agreeing all those issues are there. Your Honor, you did point out that I did not raise that issue in my argument, and I, and obviously, I want to not be faulted for not raising it. No, I got you, I got you, I got you. Your Honor, notice I've only got four seconds left. I would urge the court to address the conditional commitment and whether it triggers 1926B directly, but if the case is considered to be moot, then we would urge the court to vacate the district court's decision and remand this case for further proceedings. Thank you. All right. Thank you, Mr. Harris. I believe we have your argument. Thank you.